2021 IL App (1st) 180959-U

No. 1-18-0959

Order filed January 8, 2021

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 4893 |
| | ) | |
| JUSTIN HARRIS, | ) | Honorable |
| | ) | Geary W. Kull, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Delort and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's sentences for kidnapping and aggravated kidnapping are vacated and the matter is remanded for resentencing where the trial court considered an improper factor in aggravation.

¶ 2    Following a bench trial, defendant Justin Harris was convicted of one count of kidnapping (720 ILCS 5/10-1 (West 2016)) and three counts of aggravated kidnapping (720 ILCS 5/10-2(a)(4) (West Supp. 2015), and sentenced to concurrent prison terms of 4 years for kidnapping and 11 years for each count of aggravated kidnapping. He appeals, arguing that the trial court considered

an improper factor in aggravation at sentencing, specifically his silence at allocution, and that his sentence was excessive. We vacate defendant's sentences, remand for resentencing, and otherwise affirm.[1]

¶ 3 Defendant and co-offenders Devonte Gosha and Marliss Pelmer were charged by indictment with multiple offenses arising from an incident on March 7, 2016.[2] At defendant's and Gosha's simultaneous, severed bench trials, the State proceeded against each on counts of home invasion, aggravated kidnapping, armed robbery, aggravated battery, aggravated unlawful restraint, and aggravated unlawful use of a weapon. Regarding the aggravated kidnapping charges, the State alleged that the offenders, while armed with firearms and wearing masks, kidnapped Mariarosaria Provinzano (counts IV and IX), Sara Minahi (counts V and X), and Mariela Maldonado (counts VI and XI), and also committed aggravated kidnapping while armed with a firearm against Nelson Arias (count VIII).

¶ 4 Provinzano testified that on March 7, 2016, at approximately 9:30 p.m., she and Minahi went to Arias's apartment building in Oak Park, Illinois, to retrieve a computer charger Provinzano had left in the apartment. On a staircase in the building, Provinzano and Minahi encountered three African-American men, one of whom asked Provinzano about a "studio."

¶ 5 Provinzano and Minahi entered Arias's rooftop apartment, which was separated from the staircase by an outdoor walkway. Provinzano greeted Arias, then retrieved her charger. As she exited the apartment, three African-American men approached, each holding firearms and wearing

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order stating with specificity why no substantial question is presented.

[2] Marliss Pelmer pleaded guilty to armed robbery with a bludgeon and is not a party to this appeal.

masks. Provinzano believed these were the men she saw on the stairwell because they wore the same clothing. The men instructed her to re-enter the apartment.

¶ 6    While inside, the men aimed firearms at Provinzano and Minahi and forced them into a music studio. The men left the studio, and Provinzano heard "commotion" from another room, including "glass breaking, stuff hitting against the wall," and "people grunting." Later, the men also placed Amarzaya Makhbal, Arias's assistant, in the studio with Provinzano and Minahi. Makhbal was bleeding from his head and crying. One of the men asked Makhbal for money and threatened him.

¶ 7    The men took Provinzano's phone, computer charger, and keys, and a "silver bag of money" from the studio. They moved Provinzano and Minahi to a bedroom, where Arias and his friends Michael Silva and Maldonado were. At some point, Provinzano heard "a bunch of footsteps running away," followed by the police entering the apartment.

¶ 8    The police brought Provinzano outside and showed her two African-American men sitting handcuffed on the ground, whom she identified as two of the men involved in the incident. Later, at the police station, Provinzano identified photographs of the three men, which she identified in court as People's Exhibit Nos. 8, 9, and 10. She identified Gosha in court as the man she identified in People's Exhibit No. 9. Though initially Provinzano did not recognize anyone in court as the man she identified in People's Exhibit No. 8, she later identified defendant as that man. On redirect examination, Provinzano also identified defendant as the man who took her phone.

¶ 9    Minahi testified that while she and Provinzano were inside Arias's apartment, three African-American men wearing ski masks entered and aimed firearms at them. One of the men took her cell phone. The men then forced Minahi and Provinzano into a bedroom with Maldonado,

Silva, Arias, and Makhbal. The three men left, and shortly thereafter Minahi heard footsteps and saw the police enter the apartment. Minahi did not identify anyone to the police.

¶ 10 Maldonado testified that on March 7, 2016, she was in Arias's living room watching television when she heard a "ruckus." She looked up and saw Arias and Makhbal being led into the room by "two men with black masks *** pointing a gun at their heads." One of the men pointed a firearm at Maldonado and ordered her to the floor. The men moved Maldonado to a bedroom where Arias, Silva, and Makhbal were already present, and later brought two other girls to the bedroom. Arias and Makhbal were bleeding. Two of the men stayed in the room while the third searched Arias's apartment. At some point, Maldonado heard footsteps and police officers arrived. The three men ran from the apartment. The officers detained two of the men on the roof and brought Maldonado outside to identify them.

¶ 11 Arias testified that three armed African-American men in masks entered the apartment while Arias was in the living room with Maldonado and Makhbal. The men ordered everyone to the ground, and one of them "pistol-whipped" Arias in the back of his head multiple times. The men took jewelry, personal items, and $17,000 in cash from the apartment. One of the men took a necklace and ring from Arias's person, as well as his credit cards. The men then forced everyone into a bedroom at gunpoint and "ransack[ed]" the apartment. Shortly thereafter, Arias heard "banging noises," and the police entered. The police took Arias to view two men, whom he identified from their clothing as the men who entered his apartment. He identified Gosha and defendant in court as the two men in police custody that night. Arias did not recognize defendant's face from the incident, but recognized him generally because Arias "used to *** work with *** one of [defendant's] friends."

¶ 12    The State entered stipulations regarding police testimony. In relevant part, Oak Park police sergeant William Ballard would testify that on March 7, 2016, he responded to the incident and detained defendant on the roof of the building. Arias and Provinzano identified defendant on the scene. At the police station, Ballard recovered a necklace and earrings belonging to Arias from defendant.

¶ 13    Second, Oak Park police officer Matthew Muhr would testify that he observed Gosha run on the rooftop and throw something off the roof. Muhr detained Gosha, and Arias and Provinzano identified Gosha on the scene.

¶ 14    Third, Oak Park police officer Jeffrey Poshek would testify that he saw Pelmer run out of the front door of the building. Poshek detained Pelmer, who had a bag containing $14,448 in cash and a white Gucci bag belonging to Arias. Arias and Provinzano identified Pelmer on the scene.

¶ 15    Fourth, Forest Park police officer Daniel Miller would testify that he recovered a firearm from a bush near the apartment building, and evidence technician Ian Miller would testify that he recovered another firearm, a broken Taurus semiautomatic pistol, from the scene.

¶ 16    Oak Park police detective Angelo Episcopo testified that he showed Provinzano and Minahi pictures of firearms. Minahi identified the broken Taurus pistol. The State entered stipulations that neither defendant nor Gosha had a Firearm Owners Identification Card or concealed carry license.

¶ 17    The State also introduced evidence that DNA recovered from Arias, Silva, and Makhbal matched blood found on both the Taurus firearm and gloves recovered from the scene, and that fingerprints recovered from Minahi's phone matched defendant's fingerprints.

¶ 18   Defendant entered a stipulation that Oak Park police officer Christine Simkus would testify that following the incident, Provinzano did not describe to the police a man dressed in all black, did not state that she left Arias's apartment and saw three men approaching, and did not say that two of the men left the bedroom and "then came back, found the money, and left again."

¶ 19   Following arguments, the court found defendant and Gosha not guilty of home invasion, aggravated battery, aggravated unlawful restraint, and aggravated unlawful use of a weapon. On the charges of aggravated kidnapping while armed with a firearm, the court entered findings of guilt on the lesser-included offense of kidnapping against Provinzano, Minahi, Maldonado, and Arias (counts IV, V, VI, VIII). The court also found defendant and Gosha guilty of aggravated kidnapping while wearing a mask against Provinzano, Minahi, and Maldonado (counts IX, X, and XI), and stated that the findings of guilt on counts IV through VI merged therein. The court further found defendant and Gosha guilty of three counts of armed robbery.

¶ 20   Defendant and Gosha each moved for a new trial. In response, the court vacated the guilty findings for armed robbery.

¶ 21   Defendant's presentence investigation (PSI) report showed that he was 18 years old at the time of the offense. He had a juvenile adjudication for attempt robbery. Defendant reported that he was raised by both parents, had good relationships with his eight siblings, and had one child. He denied that his family members had a history of substance abuse. He dropped out of high school, but at the time of the report, he attended an alternative high school, where he was a senior and earned good grades.

¶ 22   Prior to sentencing, defendant submitted a report from mitigation specialist Linda Sobotka. In the report, Sobotka wrote that defendant's parents had inconsistent work histories and that

alcohol abuse was a leading factor in their divorce. Defendant's father then left Chicago, and defendant believed his father abandoned him. Defendant's brother described him as a strong person who wanted to turn his life around, and his mother described him as a "good respectful kid."

¶ 23 The report contained a letter from Jewel Jackson, defendant's aunt, who stated that she helped care for defendant and his siblings because his mother was an alcoholic. When Jackson and defendant's grandmother moved away from Chicago, defendant had no guidance and felt "alone, lost and confused." She believed defendant was a "bright young man with a bright future."

¶ 24 Sobotka listed defendant's mitigating factors as his age, family upbringing, his mother's alcohol use, his father's abandonment, the loss of loved ones, his intelligence, his desire for a second chance, and his lack of gang membership or criminal history.

¶ 25 At the sentencing hearing for defendant and Gosha, the State introduced a victim impact statement from Arias, who relayed that due to the "horrific" incident, he lost his home, money, and job. The State also emphasized that defendant had a juvenile adjudication for which he was sentenced to probation, and subsequently violated that probation.

¶ 26 In mitigation, defense counsel referenced Sobotka's report. Counsel said defendant regretted what happened and asked for the minimum sentence. Defendant did not speak in allocution.

¶ 27 The court sentenced defendant to three concurrent 11-year terms for aggravated kidnapping against Provinzano, Minahi, and Maldonado (counts IX-XI), and a concurrent four-year term for

kidnapping against Arias (count VIII).[3] The court stated that it considered Sobotka's report, defendant's record, and "some of the things that people have said about" defendant. The court acknowledged that defendant had a "difficult road" for a "child" or "young adult," but believed that did not "excuse" his conduct.

¶ 28    The court then stated that Pelmer pled guilty and "accepted responsibility," whereas in defendant's case, "even in given the opportunity to speak, there was no acceptance or responsibility. There's no remorse. There's no indication that your conduct will not continue along these lines." The court continued, "But I'm not going to punish you overwhelmingly for that." Shortly thereafter, while sentencing Gosha during the same proceeding, the court added, "like [defendant], I got nothing in terms of remorse from you."

¶ 29    The court denied defendant's motion to reconsider sentence.

¶ 30    On appeal, defendant first argues that the trial court erred by considering an improper factor in aggravation at sentencing, specifically defendant's silence at allocution. Defendant acknowledges that he did not preserve this error through a timely objection and inclusion in his postsentencing motion, but contends we may reach the issue through plain error review.

¶ 31    A reviewing court may consider an unpreserved error on plain error review where the trial court committed a clear or obvious error and (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People*

_____

[3] Defendant's mittimus lists count VIII as aggravated kidnapping rather than kidnapping. Under Illinois Supreme Court Rule 472 (eff. May 17, 2019), defendant may file a motion in the circuit court to correct the mittimus accordingly.

*v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Defendant claims both prongs of plain error review apply. We must first determine whether a clear or obvious error occurred. *People v. Sebby*, 2017 IL 119445, ¶ 49.

¶ 32    A sentencing court's decision is entitled to great deference. *People v. Snyder*, 2011 IL 111382, ¶ 36. A court may consider a defendant's lack of remorse at sentencing. *People v. Mulero*, 176 Ill. 2d 444, 462 (1997). "When inquiring into a defendant's remorse [at sentencing] *** the State may not violate a defendant's constitutional rights," including the right to remain silent. *Id.* at 462-63. When considering the propriety of a sentence, the reviewing court must consider the entirety of the proceedings, not just one specific statement from the court. *People v. Ward*, 113 Ill. 2d 516, 526-27 (1986). The reviewing court will presume that a sentencing court considered only appropriate factors absent an affirmative showing from the record to the contrary. *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). If the trial court considered an improper aggravating factor at sentencing, remand is not automatic, and "where the record indicates that the trial court's reference to the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence, a remand for resentencing is not required." *People v. Shanklin*, 2014 IL App (1st) 120084, ¶ 91.

¶ 33    Although, as the State notes, the imposition of sentence is generally a matter of judicial discretion, whether a sentencing court considered an improper factor at sentencing is a question of law that we review *de novo. People v. Bowen*, 2015 IL App (1st) 132046, ¶ 49. The defendant bears the burden of establishing that the sentence was based on an improper factor. *Id.*

¶ 34    Here, the record shows that during the sentencing hearing, the court acknowledged defendant's mitigating factors, including his youth and family history. The court juxtaposed those

factors with what it interpreted as defendant's lack of remorse. The court then contrasted defendant's lack of remorse with that of Pelmer, noting that Pelmer accepted responsibility by pleading guilty. The court continued, in relevant part, that "even in given the opportunity to speak, there was no acceptance or responsibility [by defendant.] There's no remorse. There's no indication that your conduct will not continue along these lines." The court continued, "But I'm not going to punish you overwhelmingly for that."

¶ 35    We find that the trial court committed a clear error by using defendant's exercise of his fifth amendment right to remain silent against him as evidence that he lacked remorse. The law is clear that the right to remain silent applies at sentencing. See *People v. Maggio*, 2017 IL App (4th) 150287, ¶ 48 (citing *People v. Ashford*, 121 Ill. 2d 55, 80 (1988)). The court's comment that "even in given the opportunity to speak," defendant chose not to accept responsibility, shows the court believed that defendant's choice not to speak in allocution evidenced a lack of remorse. The court also expressed concern whether defendant would continue to commit crimes in light of this lack of remorse. The plain reading of these comments is that the trial court improperly considered defendant's silence in allocution as a factor in aggravation. See *People v. Matute*, 2020 IL App (2d) 170786, ¶¶ 56, 62-63 (finding error where trial court noted the defendant did not express remorse and that his failure to speak in allocution was "disturbing"); see also *Maggio*, 2017 IL App (4th) 150287, ¶ 49 (the sentencing court may not invoke a defendant's right to remain silent during the presentencing investigation in aggravation at sentencing); *People v. Pace*, 2015 IL App (1st) 110415, ¶ 101 (vacating the defendant's sentence where the record affirmatively showed the defendant "was punished for choosing to remain silent during the sentencing hearing.") *vacated on other grounds*, No. 120097 (Ill. Nov. 23, 2016) (supervisory order).

¶ 36    The State argues that the court's consideration of defendant's silence was so insignificant in the sentencing calculus that remand is unnecessary. We disagree. The court's statement that it would not hold defendant's silence against him "overwhelmingly" makes clear that it weighed the factor to some extent. Where, as here, the degree to which the court weighed an improper aggravating factor is not obvious from the record, remand is appropriate. See *People v. Voit*, 355 Ill. App. 3d 1015, 1028 (2004).

¶ 37    The State further cites the principle that a sentencing court should be presumed to have only considered appropriate factors in support of the court's sentence here. This presumption of propriety, however, does not apply when evidence from the record directly rebuts it. See *Quintana,* 332 Ill. App. 3d at 109. Here, the record positively rebuts the presumption that the sentencing court only considered appropriate factors because it is clear the court considered defendant's silence in allocution in aggravation.

¶ 38    Having found that the court committed clear error, we move to whether this amounted to plain error. We find that it does. The second prong of plain error review is designed to address structural error or instances where a defendant suffered a "near-total deprivation" of a constitutional right. See *People v. Garner*, 2016 IL App (1st) 141583, ¶ 32 (citing *People v. Clark*, 2016 IL 118845, ¶ 47). A defendant's right to remain silent is a fundamental right. See *Mulero*, 176 Ill. 2d at 466 (improper comment on a defendant's exercise of his right to remain silent is "plain error affecting defendant's substantial rights."). Here, the court used defendant's silence in allocution against him at sentencing, depriving defendant of this right. Thus, the court's error rises to the level of second-prong plain error. See *Matute*, 2020 IL App (2d) 170786, ¶¶ 62-63 (the court found second prong plain error because the trial court "impinged upon [the defendant's]

fundamental right to liberty" by finding that his silence at allocution demonstrated a lack of remorse).

¶ 39 Having found plain error under the second prong, we do not address whether the trial court's error would constitute plain error under the first prong, nor do we address defendant's claim that his sentence was excessive because the court failed to appropriately weigh his mitigating factors.

¶ 40 For the reasons stated above, defendant's sentences are vacated and the matter is remanded for resentencing. We affirm the trial court's judgment in all other respects.

¶ 41 Affirmed in part, vacated in part, and remanded for resentencing.