NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (4th) 210037-U

NO. 4-21-0037

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 10, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Coles County |
| DEONTE T. MOORE, | ) | No. 18CF306 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | James R. Glenn, |
| | ) | Judge Presiding. |

---

PRESIDING JUSTICE DeARMOND delivered the judgment of the court.
Justices Zenoff and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) It was not error for the trial court to consider defendant's answers in a bond report and to a pretrial services officer as aggravating despite the report not being a source of information mentioned in section 5-4-1(a) the Unified Code of Corrections (730 ILCS 5/5-4-1(a) (2020)); the court did not abuse its discretion by treating the answers as an accurate source of information regarding defendant's past criminal activity.

(2) The trial court did not treat as aggravating defendant's failure to assist in the presentencing investigation or his failure to make a statement in allocution and thus did not violate defendant's fifth amendment rights (see U.S. Const., amend. V).

(3) The record does not show defense counsel provided ineffective assistance to defendant by misstating the number of defendant's children, by failing to seek the application of a newly applicable form of a factor in mitigation, or by failing to subpoena a witness to testify to defendant's relationship with his children.

(4) No cumulative error or deprivation of rights occurred.

¶ 2        Defendant, Deonte T. Moore, pleaded guilty to one count of armed robbery (720 ILCS 5/18-2(a)(1) (West 2018)). The trial court sentenced him to a term of 12 years' imprisonment and 3 years' mandatory supervised release.

¶ 3        On appeal, defendant argues he was deprived of a fair sentencing hearing for four reasons. One, the trial court improperly considered in aggravation that he had a history of prior criminality when, he contends, no reliable evidence existed he had been convicted of anything. Two, as a matter of plain error, the trial court violated his fifth amendment rights (see U.S. Const., amend. V) by treating as aggravating his failure to participate in the presentencing investigation and his failure to make a statement in allocution. Three, defense counsel was ineffective for (a) failing to tell the court defendant had two children, not one; (b) failing to ask the court to apply the newly applicable version of the factor in mitigation relating to the effect of incarceration on a defendant's children (see Pub. Act. 101-471, § 5 (eff. Jan.1, 2020) (amending 730 ILCS 5/5-5-3.1)); 730 ILCS 5/5-5-3.1(a)(18) (West 2020)); and (c) failing to present evidence a longer sentence would adversely affect those children. Four, the cumulative effect of these flaws in the sentencing process deprived defendant of a fair sentencing hearing. We affirm.

¶ 4                                  I. BACKGROUND

¶ 5        The Mattoon police arrested defendant on May 31, 2018. According to the affidavit of the arresting officer, the police responded to a call to an apartment on 21st Street in Mattoon. Occupants of the apartment reported, "[S]everal black males, all armed with firearms, unlawfully entered the apartment and proceeded to beat the resident [(elsewhere identified as Anthony Sims)] while demanding money and drugs." The perpetrators took cash and cannabis. Sims "suffered abrasions and bruising during the incident." As the perpetrators left the apartment, one "turned and fired two (2) rounds at a female who followed them out."

¶ 6        Approximately 12 hours after the incident, the police took defendant into custody. After he received *Miranda* warnings (see *Miranda v. Arizona*, 384 U.S. 436 (1966)), defendant told the interviewing officer he knew the other perpetrators were planning an armed robbery, and he had agreed to drive them to the targeted apartment. He claimed he remained in the car during the robbery and did nothing more until the other perpetrators reentered the vehicle. He further told the officer he had seen one perpetrator fire shots at the female victim. He admitted he received stolen cannabis for his role in the robbery.

¶ 7        On June 1, 2018, a pretrial services officer (PTSO) prepared a pretrial services evaluation form. The form included a checklist of risk factors, one of which was, "Adult criminal history includes at least one misdemeanor or felony conviction." The PTSO placed a check next to this this factor, adding a handwritten note: "([Defendant] Reports Cook Co Crim Trespass, poss of cannabis[.)]"

¶ 8        Defendant completed a bond report form, which was appended to the evaluation form. In a section of the form captioned "Prison," defendant checked "Yes" in response to the question, "Have you ever been to the Department of Corrections [(DOC)]?" He checked "No" to the question, "As a juvenile?" and checked "Yes" to the question, "As an Adult?" He reported the relevant "County/State" as "Cook County," the "Date of Sentence" as "August," and the "Offense" as "Being in abanded [*sic*] building Trepassing [*sic*] and Smoking some weed." Defendant, who was born on September 27, 1996, and who was thus 21 years old on the day of the incident, reported he began using "drugs/alcohol" at age 13. His last use of cannabis was on the day of the incident. He reported being married to and living with Keywana Torry—who was a codefendant—and supporting their son.

¶ 9        At defendant's initial bond hearing, counsel represented:

> "[Defendant] resides in Charleston with his wife and one-year-old child. He was about to begin a job at RuffaloCODY's this coming Monday. He has no current income. He last worked about two months ago."

The State argued for a high bond based on "the extreme danger to the public that [defendant] represents," given "the recent *** conviction out of Cook County" and defendant's "minimal connection with Coles County." The court set bond at $200,000.

¶ 10 On June 29, 2018, defense counsel filed a motion to reduce defendant's bond in which counsel represented:

> "3. Defendant has no prior felony convictions. Defense counsel has not yet received discovery to confirm his criminal history through LEADS [(Law Enforcement Agencies Data System)]. Defendant reports he made a mistake while completing his pretrial evaluation and incorrectly reported he had been to the Illinois [DOC].
>
> * * *
>
> 6. Defendant has a one year old child and is expecting another child with his girlfriend [*sic*]."

With the State's agreement, the trial court reduced defendant's bond to $50,000.

¶ 11 Defense counsel filed a motion for a further reduction of bond on August 10, 2018, and, on October 11, 2018, a motion seeking a furlough to allow defendant to attend his mother-in-law's funeral. Both motions again noted defendant's lack of *felony* convictions. The first motion noted Torry's pregnancy with the couple's second child. The trial court denied both motions.

¶ 12        Defense counsel filed a third motion to reduce bond on February 13, 2019. Counsel alleged:

> "3. Defendant has a newborn baby that resides with [Torry,] his wife[,] in Chicago, Illinois. [Torry] needs defendant's assistance in caring for the child.
>
> 4. Defendant will reside with his family at 10835 Wabash, Chicago, Illinois."

At a February 14, 2019, hearing on the motion, counsel represented:

> "To my knowledge, my client has no prior felony history. He would be residing in Chicago with [Torry] and [their] newborn child. *** [Torry] needs him to care for that child."

The trial court denied this motion in part because of defendant's intention to live in Cook County.

¶ 13        On October 24, 2019, the State filed an amended information charging defendant with two counts of home invasion (720 ILCS 5/19-6(a)(2), (a)(3) (West 2018)) and eight counts of armed robbery (720 ILCS 5/18-2(a)(1), (a)(2) (West 2018)). The counts described an incident in which defendant—or a person for whose conduct he was accountable—while armed with a firearm, entered the home of Sims, struck Sims, took cell phones from Sims, Emily Peterson, and Hilary Baker, and took cash from James Lawrence and Baker.

¶ 14        On November 15, 2019, defendant agreed to plead guilty to one count of armed robbery (720 ILCS 5/18-2(a)(1) (West 2018)). The original count at issue alleged defendant, while armed with a long gun, took Sims's cell phone. The parties agreed to amend this count to remove the reference to a long gun. The amended count thus alleged defendant was armed with a "dangerous weapon," not a firearm. The parties further noted they agreed the sentence would have

a floor of nine years, but no cap. The factual basis the State presented paralleled the affidavit of the arresting officer except for the omission of references to firearms. The State also represented Torry told the police she had knocked on Sims's apartment door, and, when a resident answered, three armed perpetrators, among them defendant, entered the apartment. Further, police had interviewed Chelsie Langenhorst, a codefendant, who admitted both she and defendant had participated in planning the robbery. Finally, the police interviewed Cameron Scott, another codefendant, who admitted he and defendant entered Sims's apartment while armed with dangerous weapons. The trial court accepted the parties' agreement and directed defendant to cooperate with the probation office in its preparation of the presentencing investigation report (PSI). The trial court provided not only *absentia* warnings for defendant should he fail to appear, but expressly referenced the fact that his failure to appear on time would not delay the hearing. This was after defendant had appeared late at several previous hearings since being released on bond.

¶ 15        According to the PSI, dated January 9, 2020, defendant posted bond and was released on March 1, 2019. After entering his guilty plea, he "reported to pre-trial and was told to report for an interview on December 10 at 2 p.m." The officer preparing the report made repeated attempts to remind defendant of the interview, but defendant appeared neither at the appointed time nor at a rescheduled December 27, 2020, interview date. The PSI thus contained only the information contained in the pretrial services evaluation. Notably, the PSI did not state defendant had any prior convictions, juvenile adjudications, or other criminal adjudications.

¶ 16        Defendant did not appear at his January 24, 2020, sentencing hearing. The State declined to present evidence. Neither party suggested relevant corrections to the PSI. Defendant

offered in evidence cooperation agreements with codefendants Torry, Langenhorst, and Melvin Galloway as indicators of potentially comparable sentences.

¶ 17      In its argument, the State contended three statutory factors in aggravation should apply. First, defendant's "conduct caused or threatened serious harm" (730 ILCS 5/5-5-3.2(a)(1) (West 2020)). Second, defendant had "a history of prior delinquency or criminal activity" (730 ILCS 5/5-5-3.2(a)(3) (West 2020)). It asserted, "You can see that [history] *** in the pretrial services evaluation *** where the defendant self-admitted to having previously been to the [DOC] in Cook County for being in an abandoned building trespassing and smoking some weed." Third, it contended a sentence of more than nine years was "necessary to deter others from committing the same crime" (730 ILCS 5/5-5-3.2(a)(7) (West 2020)). Based on these statutory factors in aggravation, defendant's failure to appear for the presentencing investigation interview or the sentencing hearing, and what the State argued was a lack of mitigating factors, the State urged the court to impose a 15-year sentence. Finally, it argued the situations of the codefendants who had cooperation agreements were not comparable.

¶ 18      Defense counsel, disagreeing with the State, contended that the statutory mitigating factor of "defendant [having] no history of prior delinquency or criminal activity or [having] led a law-abiding life for a substantial period of time before the commission of the present crime" (730 ILCS 5/5-5-3.1(a)(7) (West 2020)) should apply. Counsel argued it was "unclear" if the incident to which defendant admitted in the pretrial evaluation "was a juvenile offense or what, and nothing else has been presented today."

¶ 19      Defense counsel further argued the statutory factor in mitigation, "[t]he imprisonment of the defendant would entail excessive hardship to his dependents [(730 ILCS 5/5-5-3.1(a)(11) (West 2018))]", should apply. Counsel did not cite the then-newly applicable

version of this factor in mitigation, which stated, "[Among] the grounds [which] shall be accorded weight in favor of withholding or minimizing a sentence of imprisonment" is "defendant is the parent of a child or infant whose well-being will be negatively affected by the parent's absence," and which sets out six factors the court is to consider. Pub. Act. 101-471, § 5 (eff. Jan. 1, 2020) (amending 730 ILCS 5/5-5-3.1); 730 ILCS 5/5-5-3.1(a)(18) (West 2020). Further, counsel mentioned defendant's "child, his dependent," rather than referring to defendant's two children.

¶ 20    Defense counsel also noted the cooperation agreements showed Galloway, who was armed when he entered Sims's apartment, was to receive a nine-year sentence. Counsel argued Galloway's circumstances were comparable to defendant's.

¶ 21    The trial court accepted the State's argument concerning defendant's criminal history. It further ruled it had insufficient information about defendant's relationship with "the child" to treat hardship to a dependent as an applicable factor. It sentenced defendant to 12 years' imprisonment:

> "With regard to various factors, I am considering perhaps *** that the defendant's criminal conduct was induced or facilitated by someone other than the defendant [(730 ILCS 5/5-5-3.1(a)(5) (West 2020))]. I'm not giving great weight to it because *** I don't have [defendant] today to explain it ***. With regard to [the mitigating] factor *** that the defendant has no history of prior delinquency or criminal activity[,] I'm not able to find that based on the representation made in the Pretrial Risk Assessment where he checked the box yes for have you been in the [DOC], and it may have been the *** evaluating officer that checked that, but he

checked yes on [DOC]. No on as a juvenile. Yes as an adult. And it was this offense in August of being in the abandoned building trespassing or smoking some weed. Because I have that information, and I realize that that's not sworn testimony, I can't find [the factor of no criminal history] to exist, and with regard to Factor 11, and I believe that's now factor 18, regarding the dependent,\*\*\* the only information I have is that he is married and has one child, but I don't have any information as to the relationship with the child or support provided for the child, so I don't find that [factor applies] either.

With regard to factors in aggravation, I do find \*\*\* the defendant's conduct either causing or threatening serious harm to another. With regard to [the criminal history factor], I am going to find that he has a history of prior criminal activity. It's either delinquency or criminal activity based on the limited information that I've been provided with, and I also find \*\*\* the deterrent factor, so I find those factors to exist in aggravation.

It is important to be consistent with other cases. None of those cases have been concluded, but we do have Cooperation Agreements which gives a roadmap as to where they may end up. [Defendant] did have an opportunity to follow this Court's order and cooperate with the preparation of the [PSI], and he did not do so, and he did have an opportunity to come here today and present evidence or at least give a statement of allocution. Considering all

of those factors and the items that I have reviewed I'm going to sentence the defendant to 12 years in the Illinois [DOC] with mandatory supervised release of 3 years and credit for 275 days served."

¶ 22 Defense counsel filed a motion to reconsider the sentence, which stated, in relevant part:

"4. The sentence imposed is not in keeping with the Defendant's past history or criminality, age, mental history, medical condition, *family situation, economic status*, education, occupational or personal habits.

5. This court erred by finding [the] mitigat[ing] factor ***, no history of prior delinquency or criminal activity, did not apply. No criminal history was listed in the [PSI]. This court relied on the pretrial services report. The record is unclear as to what prior convictions, if any, defendant has." (Emphasis added.)

By the time of the hearing on the motion, defendant was back in custody. Neither party offered any argument on the motion. Defendant made no effort to explain his absence, correct the trial court's rendition of his criminal history, or further explain his family circumstances. The trial court denied the motion, stating:

"I did not consider the mitigating factor of no prior history; instead, I found that as a factor in aggravation and I did look at the pretrial report which indicated that [defendant] had been incarcerated in the [DOC] at a prior time."

This appeal followed.

¶ 23                                    II. ANALYSIS

¶ 24        Defendant argues on appeal he was deprived of his rights at sentencing in four ways. One, he contends the trial court improperly considered unreliable evidence and statutorily unacceptable evidence to conclude he had a history of criminal activity or delinquency. Two, he contends, as a matter of plain error, the trial court violated his rights under the fifth amendment by treating as aggravating his failure to participate in the PSI's preparation and his failure to give a statement in allocution. Three, he argues defense counsel was ineffective for (a) failing to tell the court defendant had two children, not one; (b) failing to ask the court to apply the newly applicable version of the factor in mitigation relating to the effect of incarceration on a defendant's children; and (c) failing to present evidence a longer sentence would adversely affect those children. Four, he argues, "The cumulative effect of the trial court's errors and counsel's ineffectiveness deprived [him] of a fair sentencing hearing." We address defendant's initial three claims in turn, concluding each is meritless. We therefore necessarily conclude his fourth claim is without merit.

¶ 25            A. Use of Inaccurate Information to Show a History of Criminality

¶ 26        Defendant argues first the trial court erred in relying on the bond report to find applicable the third statutory factor in aggravation: "the defendant has a history of prior delinquency or criminal activity" (730 ILCS 5/5-5-3.2(a)(3) (West 2020)). He contends (1) "the bond report was not a proper consideration in fashioning a sentence under the Illinois Unified Code of Corrections [(Code)]" and (2) "the information in the bond report could not be considered in aggravation because it merely listed a potential prior arrest without any demonstration of the information's accuracy or reliability." We consider these arguments in turn.

¶ 27            1. *Whether the Bond Report Was a Proper Source of Information Under the Code*

- 11 -

¶ 28    Defendant argues section 5-4-1(a) of the Code (730 ILCS 5/5-4-1(a) (2020)) lists *all* sources of information the trial court may consider in imposing sentence. The version of the sentence applicable in 2020 lists 12 sources the court was required to consider. Pub. Act 101-105, § 5 (eff. Jan. 1, 2020) (amending 730 ILCS 5/5-5-3/1); 730 ILCS 5/5-4-1(a) (West 2020). Defendant contends only one could have applied to his statement in the bond report: the court is to "consider evidence and information offered by the parties in aggravation and mitigation" (730 ILCS 5/5-4-1(a)(4) (2020)). Defendant argues the bond report was not offered by either party. Quoting *People v. Freddie Jackson*, 103 Ill. App. 2d 209, 224, 243 N.E.2d 551, 558 (1968), he states, "When evaluating [the] factors, 'the sentencing judge is limited by what the parties present for consideration.' " He asserts, "The State did not offer *any* evidence in aggravation at the sentencing hearing, let alone evidence of past criminal activity." (Emphasis in original.)

> "Simply put, there was no statutory basis for the trial court to consider information contained in the bond report at the sentencing hearing—the bond report was not a [PSI one of the sources of information section 5-4-1(a) requires the court to consider regardless of whether a party raises it (see 730 ILCS 5/5-4-1(a)(2) (2020))], *and neither party presented* [*the report*] *at the sentencing hearing*." (Emphasis added.)

Therefore, he asserts, the court erred in considering it.

¶ 29    Replying to the State's contention his statement in the bond report was nonhearsay under Illinois Rule of Evidence 801(d)(2) (eff. Oct. 15, 2015) (providing a statement is not hearsay if it is "*offered* against a party and is *** the party's own statement" (emphasis added)), defendant

contends the State did not *offer* the report. He thus argues the nonhearsay status of the statement was irrelevant to the court's ability to consider it.

¶ 30 Defendant's argument concerning the court's *ability* to consider his statement rests on interpretations of section 5-4-1(a)(4) of the Code and Rule 801(d)(2). Our review is therefore *de novo*. See, *e.g.*, *People v. Wise*, 2021 IL 125392, ¶ 23, 182 N.E.3d 656 (stating issues of statutory interpretation are subject to *de novo* review).

¶ 31 Defendant's interpretation of section 5-4-1(a) would prevent the trial court from taking note of the court record (other than the PSI and any trial evidence (see 730 ILCS 5/5-4-1(a)(1) (2020)) unless a party *formally* seeks to have that part of the record admitted into evidence. This interpretation is absurd. It would, for instance, prohibit a court from considering the factual basis for a guilty plea, a source of information not mentioned in section 5-4-1(a), unless a party somehow formally "offered" it. But parties are always free to raise matters in the record in argument to the court without formally seeking admission of the record of the same proceeding. See *People v. Jackson*, 182 Ill. 2d 30, 66, 695 N.E.2d 391, 409 (1998) ("[A] court will take judicial notice of its own records."). Therefore, either (1) section 5-4-1(a) is not an exclusive list of the matters a court may consider at sentencing or (2) under section 5-4-1(a)(4), a party may "offer" a section of the record by mentioning it in argument. We suggest the first alternative is clearly correct. The court should not be limited by the parties' arguments in considering the whole record at sentencing. However, under either alternative, defendant's argument fails.

¶ 32 The rule in *Freddie Jackson*, which held, under an earlier statutory scheme, "the sentencing judge is limited by what the parties present for his consideration" (*Freddie Jackson*, 103 Ill. App. 2d at 224), would not have barred consideration of defendant's statement in the bond

report. The State presented the statement for the court's consideration by taking note of it in its argument.

¶ 33          2. *Whether the Bond Report Was of Sufficient Accuracy for Use at Sentencing*

¶ 34          Defendant next argues, "[t]he information in the bond report could not be considered in aggravation because it merely listed a potential prior arrest without any demonstration of the information's accuracy or reliability." He contends the bond report "merely listed a prior arrest [which] was unsupported by any other evidence the parties presented at the sentencing hearing." He argues evidence of "bare arrests" may not be considered at a sentencing hearing, and "a mere list of arrests and charges unsupported by live testimony or other evidence does not meet the [accuracy] standard [for consideration at sentencing]." He concedes, under *People v. LaPointe*, 88 Ill. 2d 482, 498 431 N.E.2d 344, 351 (1981), the " 'relevancy and accuracy of the information submitted[,]' [is] more important than '[w]hether a defendant had been prosecuted and convicted for other misconduct[.]' [Citation.]" But he argues the court erred in considering the statement in the bond report because the court "had no basis on which to decide if the offense was actually committed," and because no other evidence supported the existence of a conviction.

¶ 35          We note defendant concedes the Illinois Rules of Evidence do not apply at sentencing hearings (see Ill. R. Evid. 1101(b)(3) (eff. Sept 17, 2019)) and, further, " '[t]he source and type of admissible information [at sentencing] is virtually without limits' " (quoting *People v. Sims*, 403 Ill. App. 3d 9, 23, 931 N.E.2d 1220, 1233 (2010)).

¶ 36          In response, the State contends the bond report was proper evidence of a prior conviction. It argues, although the Illinois Rules of Evidence do not apply at sentencing, the statements to the PTSO and in the bond report would otherwise be admissible nonhearsay under

Illinois Rule of Evidence 801(d)(2) (eff. Oct. 15, 2015). In other words, statements such as those contained in the bond report would be admissible against defendant *at trial* under Rule 801(d)(2), and thus, *a fortiori* should be admissible at the sentencing hearing.

¶ 37　　　The State further argues the pretrial services evaluation and the bond report contain admissions of a conviction, not merely an arrest. It points to the handwritten note in the pretrial services evaluation as an admission by defendant to the PTSO defendant had been convicted in Cook County of trespass and possession of cannabis. It further points to defendant's response to a question in the bond report as an admission he had been to the DOC as an adult for being in an abandoned building and smoking cannabis. According to the State, these statements, which defendant "never denied," "demonstrated an adult criminal history that included at least one misdemeanor or felony conviction." In particular, it contends defendant admitted in the bond report he had received a " 'sentence' " and "had been to the [DOC]," and the statement was reliable because it was an admission against his interest. Further, defendant did not dispute the existence of his criminal record, but merely that it was not a felony.

¶ 38　　　In reply, defendant makes three arguments. First, he contends his statements do not satisfy the relevancy and admissibility requirements of Illinois Rule of Evidence 401 (eff. Jan 1, 2011) (concerning relevance generally) and Illinois Rule of Evidence 404(b) (eff. Jan 1, 2011) (concerning admissibility of evidence of other crimes, wrongs, or bad acts). He argues his admission "would not have been relevant to establishing the charged conduct," namely, the armed robbery, "or any other fact of consequence." Second, citing Rule 801(d)(2) , he reiterates his contention the court's consideration of his statement in the bond report was improper because neither party *offered* the report in evidence. Third, he recapitulates his argument asserting the bond report was evidence only of an arrest.

¶ 39    We conclude defendant's statements in the pretrial services evaluation and the bond report were an accurate basis for the trial court to determine defendant had previously engaged in criminal activity. "The determination of admissibility of evidence at the aggravation/mitigation stage of sentencing lies within the discretion of the trial court." *People v. Terrell*, 185 Ill. 2d 467, 505, 708 N.E. 2d 309, 328 (1998); see also *LaPointe*, 88 Ill. 2d at 498 (stating the "relevancy and accuracy of the information submitted" at a sentencing hearing is "initially determined by the trial judge in the exercise of an informed discretion"). Accordingly, our review of this part of defendant's claim is for an abuse of discretion.

¶ 40    Initially, we note the parties' arguments contain two red herrings. One, the discussion of the Illinois Rules of Evidence leads to a dead end. Defendant's discussion of the rules is in defiance of his previous admission the rules are inapplicable at sentencing. The State's discussion of Rule 801(d)(2) fairly points out admissions are typically treated as reliable, but it does not answer defendant's contention an admission of a *conviction* cannot be reliable in the absence of the other expected evidence the conviction exists. Two, whether defendant had a *conviction* based on his smoking cannabis in an abandoned building is not a dispositive issue. Under *LaPointe*, a sentencing court may consider other offenses a defendant has committed, including *uncharged* offenses, if the information is relevant and accurate. *LaPointe*, 88 Ill. 2d at 498. This usually means testimony of such an offense by a live witness with firsthand knowledge. See *People v. Thomas*, 137 Ill. 2d 500, 547, 561 N.E.2d 57, 77 (1990), (stating evidence of uncharged criminal conduct was admissible at a sentencing hearing when the evidence was relevant and reliable and the witness was subject to cross-examination); see also *People v. Ramirez*, 98 Ill. 2d 439, 460-61, 457 N.E.2d 31, 41-42 (1983) (stating evidence of prior offenses met the standards of *LaPointe* when it was presented through witnesses and subject to

cross-examination). However, defendant's objection here to the use of his statements in the pretrial services evaluation and the bond report is not based on the lack of live testimony, but rather is based on the assertion they described a mere arrest.

¶ 41 We accept, for the purposes of argument, "the mere listing of prior arrests, not resulting in convictions, in a [PSI] does not satisfy the accuracy requirement of *LaPointe*." *People v. Robert Thomas*, 111 Ill. App. 3d 451, 454, 444 N.E.2d 288, 290 (1983). But, as we discuss, applying the rule in *Robert Thomas* would not make defendant's admission he committed offenses based on trespassing and possession of cannabis unreliable.

¶ 42 Based on these considerations, we take defendant's actual claim to be, given the lack of independent evidence of a conviction, the trial court abused its discretion in treating defendant's statements in the pretrial services evaluation and the bond report as accurate evidence of previous criminal conduct. We conclude no abuse of discretion occurred. Defendant's words on the bond form—"Being in abanded [*sic*] building Trepassing [*sic*] and Smoking some weed"—are not the language of someone describing a mistaken arrest. Defendant also checked boxes on the form indicating he had been to the [DOC] as an adult but not as a juvenile (a fact he would later deny, and which could easily have been due to his confusion over having been in jail). He identified his "date of sentence" for the Cook County offense as "August." Although defendant argues we cannot necessarily rely on the accuracy of this information, at the same time, defendant clearly indicated on the same form he had not been previously adjudicated a delinquent, was not then on adult probation or parole, and had no criminal convictions from another state, all of which we assume defendant would suggest were accurate. It was not an abuse of the trial court's discretion to rely on the accuracy of defendant's own entries on the bond form, as well as the information represented to the PTSO.

¶ 43    Defendant suggests, because no independent evidence existed of any adjudication or sentence associated with trespass or cannabis possession, his statement must have referred only to an arrest. This does not follow. To be sure, the record strongly suggests defendant was mistaken when he admitted he had been sentenced to the DOC as an adult. In his June 29, 2018, motion for reduction of bond, defendant denied having been to the DOC. The State opposed the motion but did not contest his claim he had not been in the DOC, something it could have easily disproved if it were false. Moreover, no sentence to the DOC appeared in defendant's PSI. The DOC has readily available online records. Those records are treated as of sufficient accuracy to permit courts to take judicial notice of them. *People v. Johnson*, 2021 IL 125738, ¶ 54, 182 N.E.3d 728. Given the "missing" evidence of a sentence to DOC, we deem it probable defendant lacked a full grasp of the legal outcome of the incident he was trying to describe in the bond report. But this confusion does not turn defendant's admission of what he *did do*—smoke cannabis in an abandoned building—into a mere description of *an arrest*. Thus, regardless of the kind of adjudication (or lack thereof) associated with the incident, it was within the court's discretion to deem defendant's statement in the bond report to be an accurate admission of his possession of cannabis and his possible commission of a criminal trespass. It thus did not err in treating the admission as establishing defendant had "a history of prior delinquency or criminal activity" (730 ILCS 5/5-5-3.2(a)(2) (West 2020)).

¶ 44           B. Violation of Defendant's Fifth Amendment Rights

¶ 45    Defendant next argues, as a matter of second-prong plain error, the trial court violated his fifth amendment rights by deeming as aggravating his "failure to assist in the preparation of a [PSI] and failure to give an allocution statement." He asks us to consider the court's comment:

"[Defendant] did have an opportunity to follow this Court's order and cooperate with the preparation of the [PSI], and he did not do so, and he did have an opportunity to come here and present evidence or at least give a statement of allocution."

He analogizes the court's comments to those in *People v. Maggio*, 2017 IL App (4th) 150287, 80 N.E.3d 72, in which the court commented negatively on the defendant's refusal to participate in the presentencing investigation, and in *People v. Matute*, 2020 IL App (2d) 170786, 168 N.E.3d 673, in which the court deemed aggravating a defendant's failure to use his opportunity to make a statement in allocution to express remorse.

¶ 46        In response, the State contends the trial court "drew no negative inference from defendant's silence." It argues the trial court was explaining, because it had not heard anything from defendant and thus had no supporting evidence, it could not give much weight to the mitigating factor of defendant's "criminal conduct [being] induced or facilitated by others." It further argues the court's reasoning was similar concerning the weight it gave the codefendants' cooperation agreements: because defendant had not cooperated, it could not treat the cases involving cooperation agreements as comparable to defendant's.

¶ 47        In reply, defendant contends the *structure* of the court's ruling shows it treated his failure to assist with the PSI and failure to make a statement in allocution as aggravating. He breaks the ruling down into three parts: (1) factors in mitigation, (2) factors in aggravation, and (3) "other considerations and conclusion." He contends the court's placement of the comments at issue in the final section after its discussion of the cooperation agreements shows the court was "not reverting to its discussion of the factors in mitigation," but rather was "discussing why it believed that [he] did not deserve a minimized sentence like his codefendants," namely, "he had refused to provide

additional information at all turns, including during the pre-sentence investigation and at the sentencing hearing."

¶ 48 Defendant concedes he has forfeited this argument by failing to make a contemporaneous objection to the court's comments and by failing to raise the issue in his postsentencing motion. See *People v. Hillier*, 237 Ill. 2d 539, 544, 931 N.E.2d 1184, 1187 (2010) ("It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required."). However, he contends, under the plain error rule, we may notice plain errors or defects affecting substantial rights although they were not brought to the attention of the trial court. See Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967).

¶ 49 The plain error doctrine serves as a "narrow and limited exception" to our standard rules for preserving error. (Internal quotation marks omitted.) *People v. Ahlers*, 402 Ill. App. 3d 726, 733, 931 N.E.2d 1249, 1255 (2010). As our supreme court has explained in, among other cases, *People v. Moon*, 2022 IL 125959, ¶ 20

> "[T]he plain error rule allows reviewing courts discretion to review
> forfeited errors under two alternative prongs: (1) when a clear or
> obvious error occurred and the evidence is so closely balanced that
> the error alone threatened to tip the scales of justice against the
> defendant, regardless of the seriousness of the error [(first-prong
> plain error)], or (2) when a clear or obvious error occurred and the
> error is so serious that it affected the fairness of the defendant's trial
> and challenged the integrity of the judicial process, regardless of the
> closeness of the evidence [(second-prong plain error)]."

"Errors that fall within the purview of the second prong of the plain error rule are 'presumptively prejudicial errors—errors that may not have affected the outcome, but must still be remedied' because the error 'deprive[d] the defendant of a fair trial.' " *Moon*, 2022 IL 125959, ¶ 24 (quoting *People v. Herron*, 215 Ill. 2d 167, 185, 830 N.E.2d 467, 479 (2005)). However, regardless of the type of plain error a defendant claims, "[t]he first analytical step under the plain error rule is to determine whether there was a clear or obvious error." *Moon*, 2022 IL 125959, ¶ 22. Here, no clear or obvious error occurred.

¶ 50 Whether a trial court relied on an improper factor in imposing a defendant's sentence is a question of law; when a defendant has preserved the issue, review is thus *de novo*. *People v. Williams*, 2018 IL App (4th) 150759, ¶ 18, 99 N.E.3d 590. However, when an appellate court reviews such a question, "[t]here is a strong presumption that the trial court based its sentencing determination on proper legal reasoning, and a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court." *People v. Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 22, 979 N.E.2d 1014. A defendant claiming the use of an improper factor bears the burden to establish an improper factor affected the sentence. *Williams*, 2018 IL App (4th) 150759, ¶ 18.

¶ 51 The fifth amendment to the United States Constitution—which is applicable to the states by action of the fourteenth amendment (U.S. Const., amend. XIV; *Allen v. Illinois*, 478 U.S. 364, 368 (1986))—provides, in relevant part, "No person *** shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. The fifth amendment right against self-incrimination applies during the sentencing phase. *Maggio*, 2017 IL App (4th) 150287, ¶ 48. Defendants therefore have the right to remain silent during the presentence investigation, and "invocation of the right cannot be used as an aggravating factor at sentencing." *Maggio*, 2017 IL

App (4th) 150287, ¶ 49. By the same reasoning, a court may not treat as aggravating a defendant's decision to forgo making a statement in allocution.

¶ 52       We find nothing in the trial court's explanation of defendant's sentence sufficient to overcome the presumption it based its determination on proper reasoning. Defendant subjects the court's sentencing statement to a close reading more appropriate to statutory analysis than to the interpretation of an oral ruling. This approach is inconsistent with the presumption the court "based its sentencing determination on proper legal reasoning." *Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 22.

¶ 53       In his reply brief, defendant summarizes his argument the court improperly used his nonparticipation against him:

> "To start, the court's sentencing analysis can easily be broken down into three parts, with each corresponding to a distinct piece of the three-paragraph ruling: (1) factors in mitigation; (2) factors in aggravation; and (3) other considerations and conclusion. This compartmentalization is important because *** it shows that the court was not explaining its application of mitigating factors or a lack of evidence pertaining thereto when it faulted [him] in violation of his Fifth Amendment rights.
>
> ***
>
> The court then moved on to the factors in aggravation. *** But, immediately after pointing to [the cooperation agreements], the court stated:

'[Defendant] did have an opportunity to follow this Court's order and cooperate with the preparation of the Presentence Investigation Report, and did not do so, and he did have an opportunity to come here today and present evidence or at least give a statement of allocution. *Considering all of those factors and the items that I have reviewed* I'm going to sentence [defendant] to 12 years in the Illinois [DOC][.]' ([E]mphasis added[.])

Matching the overall structure of the analysis, this paragraph demonstrates that the court separately considered 'all of those factors' it had discussed in aggravation in mitigation, as well as 'the items' it reviewed such as the failure to participate and present evidence, before arriving at the 12-year sentence. Thus, as argued in the opening brief, the trial court drew negative inferences in violation of the Fifth Amendment."

¶ 54    Defendant reads an excessively formal structure into the trial court's ruling—a structure which, we note, is created in part by the paragraph breaks inserted by the court reporter. Defendant uses this somewhat arbitrary structure to suggest his lack of participation was at the

core of the court's sentencing decision. However, when we assume the court applied proper legal reasoning, we cannot give the court's comments the sort of close reading found in defendant's argument. We must read the court's comments as a whole and without the implausible assumption the court structured its comments as if in a formal essay. We recognize the trial court is ruling from the bench, immediately after hearing arguments of counsel, and without the 20/20 editing hindsight defendant presupposes. Properly read, the court's statement defendant failed to use his "opportunity to *** cooperate with the preparation of the [PSI]" and failed to use his opportunity to "at least give a statement of allocution" relates to the court's comments about its lack of information about the possible mitigating factors of the influence of others and the effect on his dependents as well as perhaps clear up, for purposes of mitigation as well, exactly what his criminal record proved to be. We thus conclude defendant has not shown an improper consideration of his decision to remain silent influenced the court's sentencing decision.

¶ 55        The trial court's comments here were distinguishable from those in *Maggio* and *Matute*, on which defendant relies. In *Maggio*, the trial court explicitly considered the defendant's refusal to answer the questions of the court services officer [CSO] as a sign of poor rehabilitative potential:

> " 'It is significant to this court and troubling that when [the CSO] went out to interview the defendant in jail, he refused to cooperate with the interview and refused to fill out the social form and the history that was necessary, *** knowing [the CSO] *** was an arm of the court, and he still refused twice to be interviewed and did not fill out the social history form. *** [T]hat certainly speaks volumes about his attitude, and is something the

court takes into consideration in measuring rehabilitative potential.' "

*Maggio*, 2017 IL App (4th) 150287, ¶ 49.

This was the comment the *Maggio* court "conclude[d] ***[was] an improper comment on defendant's fifth amendment right to remain silent during the presentence investigation." *Maggio*, 2017 IL App (4th) 150287, ¶ 49. Here, by contrast, rather than considering defendant's nonparticipation as aggravating, the court merely noted his nonparticipation as the basis for the lack of information preventing it from potentially applying factors in mitigation.

¶ 56    An error akin to the one in *Maggio* occurred in *Matute*. The trial court in *Matute* commented:

" 'I find [it] a little bit disturbing that the defendant has not

offered any allocution whatsoever and even changed the story when

[it] came to statements [that defendant] made to the probation officer

which [vary] significant[ly] from the video confession that this

defendant has given.' " *Matute*, 2020 IL App (2d) 170786, ¶ 56.

The trial court also added, " 'I also considered heavily the defendant's lack of remorse and the defendant's now recent denial.; " *Matute*, 2020 IL App (2d) 170786, ¶ 57. The *Matute* court held the trial court violated defendant's fifth amendment rights when it used the defendant's silence to infer a lack of remorse. *Matute*, 2020 IL App (2d) 170786, ¶ 59. Again, no such improper inference occurred here; the court merely explained defendant's silence deprived it of evidence to support two potentially applicable factors in mitigation.

¶ 57    As defendant has not shown error, *a fortiori*, he has not shown clear or obvious error. We therefore need not proceed further in the plain error analysis. See *Moon*, 2022 IL 125959, ¶ 22.

¶ 58                        C. Ineffective Assistance of Counsel

¶ 59           Defendant argues defense counsel was ineffective for (a) failing to tell the court defendant had two children, not one; (b) failing to ask the court to apply the version of section 5-5-3.1(a) of the Code effective on January 1, 2020, which would have allowed the court to give deeper consideration of the effect of his incarceration on his dependent children; and (c) failing to present evidence a longer sentence would adversely affect those children. He contends, given the representations counsel previously made to the court concerning defendant's family, the record shows counsel could have presented evidence sufficient to allow the court to treat defendant's relationship with his two children as mitigating and certainly could have avoided telling the court defendant had one, not two, children.

¶ 60           In response, the State contends defendant's argument is unsupported by the record and thus based on mere conjecture. It notes the court declined to deem mitigating defendant's status as a father on the basis it lacked evidence of the nature of the parent-child relationship. It further argues, given defendant's absence, defense counsel had no way to offer appropriate evidence. Finally, it points out the court explicitly noted the applicability of the newly effective version of section 5-5-3.1(a) of the Code. It thus contends defendant could not have been prejudiced by counsel's failure to advocate for the applicability of the amendment.

¶ 61           Replying, defendant first contends the number of a defendant's children is necessarily relevant to the hardship that defendant's incarceration will impose on those children. He next argues the record shows defense counsel could have presented evidence of defendant's relationship with his children. He points to filings in which defense counsel noted the birth of defendant's second child, his desire to attend his mother-in-law's funeral, and his stated intention to live with his wife and children when released on bond. Further, he suggests, despite his absence

from the sentencing hearing, defense counsel could have established the strength of his relationship with his children by subpoenaing Torry as a witness in mitigation. It takes a special level of audacity for a defendant to fail to appear for his own sentencing, after failing to cooperate at all with his own presentence investigation, and then claim trial counsel could have done more on his behalf.

¶ 62     The sixth amendment guarantees a defendant the right to effective assistance of counsel at all critical stages of a criminal proceeding (U.S. Const., amend. VI; *People v. Hughes*, 2012 IL 112817, ¶ 44, 983 N.E.2d 439), including sentencing (*People v. Lawrence Jackson*, 205 Ill. 2d 247, 258-59, 793 N.E.2d 1, 9 (2001)). A defendant may properly raise a claim of ineffectiveness of counsel for the first time on appeal. *People v. Jefferson*, 2021 IL App (2d) 190179, ¶ 26, 190 N.E.3d 323. In such appeals, our review is equivalent to *de novo* review. *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 88, 129 N.E.3d 755.

¶ 63     We analyze a defendant's claim of ineffective assistance of counsel under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Veach*, 2017 IL 120649, ¶ 29, 89 N.E.3d 366. To prevail on such a claim, "a defendant must establish that his counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's deficient performance." *People v. Brown*, 2017 IL 121681, ¶ 25, 102 N.E.3d 205. The reasonableness of counsel's performance is measured by "an objective standard of competence under prevailing professional norms." *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163 (1999). A reviewing court applies a strong presumption "counsel's conduct falls within the wide range of reasonable professional assistance"; a reviewing court must presume a purportedly unreasonable action was the product of sound trial strategy. *People v. Manning*, 241 Ill. 2d 319, 334, 948 N.E.2d 542, 547 (2011). Concerning prejudice, "[t]he defendant must show

that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different; a "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

¶ 64 A claim of ineffective assistance fails unless the defendant satisfies *both* prongs of the *Strickland* test. *Hibbler*, 2019 IL App (4th) 160897, ¶ 88. Consequently, if a defendant fails to show prejudice, a reviewing court need not decide whether counsel's performance was deficient. *Evans*, 186 Ill. 2d at 94.

¶ 65 Defendant fails to show prejudice. First, the parties do not dispute the court's acknowledgment of the applicability of the new amendments to section 5-5-3.1(a). Therefore, it requires no further discussion to conclude defense counsel's failure to ask the court to apply the amended section had no effect on the proceeding's outcome. Second, as we will discuss, defendant cannot show defense counsel could have presented evidence which would have had a reasonable probability of changing the outcome at sentencing.

¶ 66 Initially, we agree with defendant's assertion defense counsel missed several opportunities at sentencing to present information relevant to defendant's importance to his family. A sentencing court " 'may search anywhere, within reasonable bounds, for other facts which tend to aggravate or mitigate the offense' " provided it "exercise[s] care to insure the accuracy of information considered' " *LaPointe*, 88 Ill. 2d at 494-95 (quoting *People v. Adkins*, 41 Ill. 2d 297, 300-01, 242 N.E.2d 258, 260 (1968)). As defendant notes, under Illinois Supreme Court Rule 137(a) (eff. Jan. 1, 2018), "The signature of an attorney *** constitutes a certificate by him that he has read the *** motion***; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact." Thus, motions filed by defense counsel bear some presumption of accuracy. Further, "a court will take judicial notice of its own records." *Jackson*,

182 Ill. 2d at 66. Therefore, we think it was within the court's discretion to consider attorney representations in defense motions as bearing on factors in mitigation. Defense counsel thus could have pointed to his (1) August 18, 2018, motion seeking a bond reduction in which he noted, "Defendant will reside [in Chicago] with his grandmother, aunt, wife and child," and, "His wife is also pregnant"; (2) October 9, 2018, motion in which he sought a furlough for defendant to attend his mother-in-law's funeral; or (3) February 13, 2019, motion for reduction of bond in which he stated, "Defendant has a newborn baby that resides with his wife in Chicago, Illinois," and, "His wife needs [his] assistance in caring for the child." Certainly, the record shows defense counsel knew defendant had two children, not one. Counsel could and should have said so to the court.

¶ 67        Nevertheless, the record does not establish enough about defendant's relationship to his children to have allowed the court to treat possible harm to them from defendant's incarceration as mitigating. The relevant portion of the then-applicable version of section 5-5-3.1 provides, among the "grounds [to be] *** be accorded weight in favor of withholding or minimizing a sentence of imprisonment" (730 ILCS 5/5-5-3.1(a) (West 2020)), are:

"(18) The defendant is the parent of a child or infant whose well-being will be negatively affected by the parent's absence. Circumstances to be considered in assessing this factor in mitigation include:

(A) that the parent is breastfeeding the child;

(B) the age of the child, with strong consideration given to avoid disruption of the caregiving of an

infant, pre-school or school-age child by a parent;

(C) the role of the parent in the day-to-day educational and medical needs of the child;

(D) the relationship of the parent and the child;

(E) any special medical, educational, or psychological needs of the child;

(F) the role of the parent in the financial support of the child.

Under this Section, the defendant shall have the right to present a Family Impact Statement at sentencing, which the court shall consider prior to imposing any sentence \*\*\* Unless the court finds that the parent poses a significant risk to the community that outweighs the risk of harm from the parent's removal from the family, the court shall impose a sentence in accordance with subsection (b) that allows the parent to continue to care for the child or children." 730 ILCS 5/5-5-3.1(a)(18) (West 2020).

¶ 68 None of the information defense counsel might have presented to the trial court would have established any of the six circumstances in section 5-5-3.1(a)(18) as mitigating. Breastfeeding obviously is not a consideration. Nothing in the record establishes defendant had a

role in caregiving. To be sure, defendant expressed a desire to be a caregiver when he was seeking release on bond. However, the record is devoid of anything to show the nature and extent of his relationship to his children *after* his March 1, 2019, release. Given the absence of evidence defendant would in fact act as a caregiver, that he had two children, not one, is immaterial to the harm his children would suffer from his incarceration. Next, nothing in the record established defendant had had any day-to-day role in the education of his children or in meeting their medical needs. Nothing suggests either child had any special needs. Moreover, nothing in the record suggests defendant had any role in the financial support of his children. The closest the record has to such an indication is defense counsel's representation about defendant's employment at the original bond hearing: "[Defendant] was about to begin a job at RuffaloCODY's this coming Monday. He has no current income. He last worked about two months ago." This representation does not suggest defendant was a reliable source of financial support for his family. Given the lack of evidence defendant was providing financial support for *one* child, his role in providing financial support for *a second* child was not established. Therefore, although defense counsel certainly should have given the trial court correct information about the number of defendant's children, and although defense counsel could have asked the court to note portions of the record suggesting some relationship between defendant and his family, neither of those actions would have changed the outcome at sentencing. Defendant's argument conveniently ignores the fact that, under any circumstance, defendant was going to be incarcerated for at least 9 years under the terms of the plea and wound up with a sentence only 3 years higher than the minimum and 3 years lower than recommended by the State. Measuring the impact of the last 3 years of incarceration after serving the required 9 seems an exercise in futility. The record thus does not allow defendant to make the showing of prejudice *Strickland* requires. Defendant argues counsel should have subpoenaed Torry

to testify to the relationship between defendant and his children. Defendant incorrectly expects us to presume such testimony would be mitigating and ignores the reality of his required sentence in the first place. He presumes such testimony would establish the applicability of at least one of the factors in section 5-5-3.1(a)(18). A claim defense counsel was ineffective for failing to call a witness typically must be supported by an affidavit (or equivalent evidence) from the proposed witness setting out what his or her testimony would have been. See, *e.g.*, *People v. Harris*, 2019 IL App (4th) 170261, ¶ 14, 141 N.E.3d 1 (stating the affidavit of a proposed witness is necessary to support a claim in a postconviction petition that counsel was ineffective for failing to call that witness). The record contains no such affidavit or any evidence which could substitute for such an affidavit. Defendant thus cannot demonstrate prejudice based on counsel's failure to call Torry as a witness. The same applies to any other nonrecord evidence defendant might suggest counsel could have presented.

¶ 69                                    D. Cumulative Error

¶ 70          Finally, defendant asserts the cumulative effect of the trial court's errors and of defense counsel's ineffectiveness deprived him of a fair sentencing hearing. As we have held defendant has shown neither error by the trial court nor ineffectiveness by counsel, we necessarily conclude no such cumulative effect occurred.

¶ 71                                    III. CONCLUSION

¶ 72          For the reasons stated, we affirm the trial court's judgment.

¶ 73          Affirmed.